IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Superior Care Pharmacy Inc.,
et.al.,

       Plaintiffs,

      v.                  Case No. 2:10-cv-207

Medicine Shoppe International,
Inc., et al.,

       Defendants.


<u>OPINION AND ORDER</u>

     This is a potential class action brought pursuant to 28 U.S.C. §1332(d). According to the first amended complaint filed on June 1, 2010, plaintiffs are pharmacy businesses or owners of pharmacies who have entered into franchise agreements with defendant Medicine Shoppe International, Inc. ("Medicine Shoppe") and/or defendant Medicap Pharmacies Incorporated ("Medicap")(collectively "MSI"). The plaintiffs are MS Artesia 742, Inc. ("MS Artesia"), a Medicine Shoppe franchisee and California corporation with its principal place of business in California; Daniel Reif, Inc. ("Reif"), a Medicine Shoppe franchisee and Kansas corporation with its principal place of business in Kansas; Superior Care Pharmacy, Inc. ("Superior Care"), a Pennsylvania corporation and Medicap franchisee with its principal place of business in Pennsylvania; Trone Health Services, Inc. ("Trone"), a Medicap franchisee and Idaho corporation with its principal place of business in Idaho; Toni R. Sumpter and Daniel D. Sumpter, Medicap franchisees who are citizens of Iowa; and Marilyn Gaye Moseman and Robert F. Moseman, Medicap franchisees who are citizens of North Carolina.

     MSI is alleged to be a Delaware corporation with its principal

place of business in Dublin, Ohio.  First Amended Complaint, ¶ 11.
Medicap is allegedly  an Iowa corporation with its principal place
of business in Des Moines, Iowa.  First Amended Complaint, ¶ 15.
Medicap was acquired by MSI in 2003, and MSI was acquired in 1995
by defendant Cardinal Health, Inc. ("Cardinal"), a Delaware
corporation with its principal place of business in Dublin, Ohio.
First Amended Complaint, ¶¶ 10, 13.  Cardinal has guaranteed MSI's
conduct and contractual obligations with respect to Medicine Shoppe
franchises, and has guaranteed Medicap's conduct and contractual
obligations with respect to Medicap franchisees.  First Amended
Complaint, ¶¶ 10, 14.

In response Plaintiffs assert claims for fraud and breach of contract, and
seek a declaratory judgment regarding the contractual obligations
of the parties.  These claims arise from a franchise offering made
by MSI to all Medicine Shoppe and Medicap franchisees on or about
March 4, 2009.  See First Amended Complaint, Ex. E.  This offering
presented the franchisees with three options.  Option 1, the MSI
2009 Franchise Program, featured a buy-out of the franchisee's
existing franchise agreement at a rate of 55% of discounted future
earnings, and the execution of a new MSI 2009 Franchise Agreement
which would be in effect for the period of time remaining on the
existing agreement, and which would require the payment of a flat
rate franchise fee of $499 per month.  Option 2 consisted of a
complete buyout and termination of the existing franchise agreement
by paying 100% of the franchise fees due for the remaining term of
the agreement, discounted by 3.5%.  Under Option 3, the franchisee
would continue to operate under its existing agreement.

In response to this offer, MS Artesia, Superior Care, and
Trone selected Option 1.  These plaintiffs signed new franchise

agreements, and also executed termination and release agreements which were effective June 30, 2009, and which terminated their prior franchise agreements.  <u>See</u> First Amended Complaint, ¶ 63; Declaration of John Fiacco, Exs. 2-5.  Reif, the Sumpters and the Mosemans selected Option 3 and maintained their previous franchise agreements.

Plaintiffs allege that defendants made false statements in the offer by indicating that they would only go forward with the new franchise system if an overwhelming number of franchisees chose Option 1, that the offer would be open until April 10, 2009, that the offer was non-negotiable, and that the offer was made to grow and promote the Medicine Shoppe and Medicap franchise systems. First Amended Complaint, ¶ 100.  Plaintiffs allege that even though fewer than 55% of the eligible franchisees selected Option 1, defendants decided to transition to the new system.  Plaintiffs also allege that defendants negotiated more favorable agreements with certain franchisees, extended the deadline of April 10, 2009, for selecting an option to June 30, 2009, and further extended to January 15, 2010, the period for Option 3 franchisees to select Option 1.  First Amended Complaint, ¶ 101.  Plaintiffs allege that these misrepresentations falsely induced those plaintiffs who elected Option 1 to do so, and falsely induced the Option 3 plaintiffs not to elect Option 1.  First Amended Complaint, ¶¶ 107-108.  Plaintiffs further allege that defendants breached the franchise agreements and their duty of good faith and fair dealing by deciding to permit some franchisees to operate under their existing agreements rather than changing all franchisees to the new system, and by failing to comply with their contractual obligations to provide support services.

This matter is before the court on defendants' motion to dismiss or transfer the claims of Reif, the Sumpters and the Mosemans, and to dismiss the claims of Superior Care, MS Artesia and Trone.  Plaintiffs have filed a motion for leave to file a surreply.  The motion for leave to file a surreply (Doc. No. 49) is granted.

I. Motion to Dismiss/Transfer Claims of Reif, the Sumpters and the Mosemans

Defendants move to dismiss the claims of Reif, the Sumpters and the Mosemans pursuant to Fed.R.Civ.P. 12(b)(6) on the basis of the forum-selection clauses contained in their respective franchise agreements, or in the alternative, to transfer venue pursuant to 28 U.S.C. §1404(a).  Section 14.H of the franchise agreement with Medicine Shoppe (MSI) signed by Daniel Reif and Gail Reif dated March 25, 2004, Exhibit B to the First Amended Complaint, states that any action between the parties to the agreement shall be brought only in the Federal District Court for the Eastern District of Missouri, in St. Louis, Missouri, unless that court lacks jurisdiction, in which case the action shall be brought in the state courts in St. Louis County, Missouri.  The agreement further states that Missouri law governs the agreement.  Ex. B., §14.G.

The franchise agreement with Medicap signed by the Mosemans on August 31, 2000, Exhibit C to the First Amended Complaint, states in §XIV(11) that any litigation pertaining to the agreement or to any aspect of the business relationship between the parties must be filed in Polk County, Iowa, and that Iowa law governs the agreement.  The franchise agreement with Medicap signed by the Sumpters on December 30, 2000, Exhibit I to the First Amended Complaint, also states in §XIV(11) that the agreement is to be

4

governed by the laws of Iowa, and that any litigation must be commenced in Polk County, Iowa.

Although the above franchise agreements are between Reif and Medicine Shoppe, and between the Mosemans and the Sumpters and Medicap, defendants argue that the other entities named as defendants by those plaintiffs may also seek to enforce the forum-selection clauses. See Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988)(holding that where the alleged conduct of defendants who are not parties to the contract containing the forum-selection clause is closely related to the contractual relationship, the forum-selection clause applies to all defendants); Damon's Restaurants, Inc. v. Sun Pacific Management, LLC, No. 2:06-CV-544 (unreported), 2006 WL 3360283 at *2 (S.D.Ohio Nov. 17, 2006)(applying forum-selection clause to guarantors).

Plaintiffs argue that this court should not consider defendants' efforts to enforce the forum-selection clauses under Rule 12(b)(6), but rather should confine its analysis to whether a transfer of venue is appropriate under §1404(a). However, the Sixth Circuit has indicated that both of these vehicles are appropriate mechanisms for seeking enforcement of a forum-selection clause. See Langley v. Prudential Mortgage Capital Co., LLC, 546 F.3d 365, 369 (6th Cir. 2008)(remanding case to district court to consider defendant's motion to enforce forum-selection clause under either Rule 12(b)(6) or § 1404(a)).[1]  Therefore, the court will

---

[1]Defendants have also moved in the alternative to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3).  While there is some support for employing that rule to invoke a forum selection clause, the Sixth Circuit stated in Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531, 538-39 (6th Cir. 2002) that Rule 12(b)(3) "is simply the procedural vehicle by which to challenge improper venue" and did not control the parties' venue dispute, whereas §1404(a) was "broad enough to control the issue of whether this forum-selection clause should be given effect." Thus, the court will not consider defendants' argument

address defendants' motion to dismiss.

Federal law governs the inquiry of whether a forum-selection clause is enforceable. Wong v. Partygaming Ltd., 589 F.3d 821, 828 (6th Cir. 2009). A forum-selection clause should be upheld absent a strong showing that it should be set aside. Id. (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)). The factors to be examined in evaluating the enforceability of a forum-selection clause include: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. Wong, 589 F.3d at 828. The party opposing the forum-selection clause bears the burden of showing that the clause should not be enforced. Id.

In regard to the first factor, the party opposing the clause must show fraud in the inclusion of the clause itself; general claims of fraud are not sufficient to invalidate a forum-selection clause. Preferred Capital, Inc. v. Assocs. of Urology, 453 F.3d 718, 722 (6th Cir. 2006); see also Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14 (1974)(forum-selection clause is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion). In regard to the second factor, whether the courts of the selected forum would ineffectively or unfairly handle the suit, the mere fact that different or less favorable foreign law or procedures would apply is not enough. Shell v. R.W. Sturge, Ltd., 55 F.3d 1227, 1230 (6th Cir. 1995).

---

under Rule 12(b)(3).

Rather, the foreign law must be such that a risk exists that the litigants will be denied any remedy or will be treated unfairly. Id. As to the third factor, plaintiff must show that enforcement of the clause would be so inconvenient that its enforcement would be unjust or unreasonable; mere inconvenience is not sufficient. Wong, 589 F.3d at 829. Enforcement of a forum-selection clause is not unreasonable where the party opposing enforcement fails to produce any evidence that it was exploited or unfairly treated. See General Electric Co. v. Siempelkamp GmbH & Co., 29 F.3d 1095, 1099 (6th Cir. 1994).

Here, plaintiffs have not argued that the forum-selection clause was obtained by fraud, duress, or other unconscionable means, that the designated forums would ineffectively or unfairly handle the suit, or that the designated forums would be so seriously inconvenient such that requiring the plaintiffs to bring suit there would be unjust. There is no evidence to support invalidating the forum-selection clause based on any of these factors.

Rather, plaintiffs argue that the clauses should not be enforced because Medicap no longer has any business operations in Iowa, and because most of MSI's business is conducted in Dublin, Ohio. However, there is evidence that MSI still conducts business in Missouri relating to its Medicine Shoppe franchise operations. Defendants have submitted the declaration of John Fiacco, Director of Operations for MSI, as an exhibit to their motion. Mr. Fiacco states that he oversees the franchise support operations for the MSI and Medicap pharmacies franchise system from his office in St. Louis, Missouri, and that the franchise development group for MSI and Medicap is also located in St. Louis, Missouri. Fiacco Decl.,

¶¶ 3-4.  In any event, regardless of the extent to which Medicine Shoppe (MSI) still conducts business in Missouri, or whether Medicap still has offices in Iowa, these entities are parties to the franchise agreements containing the forum-selection clauses. They are entitled to enforcement of those clauses in the absence of one of the legally recognized reason for not enforcing them.  Since Reif, the Sumpters and the Mosemans have failed to show that any of the above three factors warrant nonenforcement of the forum-selection clauses in their respective franchise agreements, defendants' motion to dismiss the claims of those plaintiffs is well taken.

As noted above, the enforcement of a forum-selection clause may also be addressed by way of a motion to transfer venue pursuant to §1404(a).  In the interests of judicial economy, this court has also analyzed the §1404(a) factors and has concluded that these factors would also support enforcement of the forum-selection clauses.  The presence of a forum-selection clause is a significant, although not the sole, factor in the §1404(a) analysis.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-31 (1988).  "While courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3rd Cir. 1995).

As to the weight accorded to the plaintiffs' choice of forum (Ohio), the presence of a valid forum-selection clause negates the presumption given to the plaintiff's choice of forum and shifts to the plaintiffs the burden of proving that the transferee district is a superior venue to the transferor court.  Bacik v. Peek, 888 F.Supp. 1405, 1414 (N.D.Ohio 1993).  Although the forum-selection

8

clause is not dispositive, "it is entitled to substantial consideration." Jumara, 55 F.3d at 880; see also Stewart, 487 U.S. at 29 ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."). Here, Reif has agreed to a forum in Missouri, and the Sumpters and the Mosemans have agreed to a forum in Iowa. This factor weighs substantially in favor of enforcing the forum-selection clauses.

In considering a motion to enforce a forum-selection clause through a change venue under §1404(a), the court should consider the private interests of the parties as well as public-interest concerns. Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991). Private interests include:

> (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; and (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively.

Smith v. Kyphon, Inc., 578 F.Supp.2d 954, 962 (M.D.Tenn. 2008).

Public interest factors include:

> (1) the enforceability of the judgment; (2) practical considerations affecting trail management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law.

Id.

As to the first group of factors, this court notes that Reif is located in Kansas, which is closer to the chosen forum in Missouri than this court in Ohio. The Sumpters are located in their chosen forum of Iowa, and the Mosemans, who are located in

9

North Carolina, would have to travel a substantial distance regardless of whether a trial were held in Ohio or Iowa. In addition, the parties, by consenting to the forum-selection clauses, have agreed that Missouri, in the case of Reif, and Iowa, in the case of the Sumpters and the Mosemans, are convenient forums. <u>Viron Int'l Corp. v. David Boland, Inc.</u>, 237 F.Supp.2d 812, 815 (W.D.Mich. 2002).

The defendants have presented the declaration of Mr. Fiacco, who states that the MSI franchise development group, as well as several former MSI employees and most paper documents relating to the MSI and Medicap franchise systems are located in the St. Louis, Missouri, area. However, MSI and Cardinal also have offices in Dublin, Ohio. Since it appears that, regardless of whether the trials are held in Missouri or Iowa, or in Ohio, these cases would require some witnesses to travel, the convenience of witnesses does not weigh heavily in favor of any particular forum. As the defendants note, the ease of access to documents and other evidence is not a significant factor, since documents can be transmitted electronically. The parties to the franchise agreements agreed to submit to the jurisdiction of the courts in the selected forums, and there has been no showing that obtaining process over unwilling witnesses would be an issue here.

Plaintiffs argue that they should not be forced to litigate in multiple forums. However, this factor is not sufficient to invalidate a forum-selection clause. <u>Fred Lurie Associates, Inc. v. Global Alliance Logistics, Inc.</u>, 453 F.Supp.2d 1351, 1355-57 (S.D.Fla. 2006). In <u>Global Alliance</u>, the court enforced the forum-selection clauses even though this resulted in the plaintiff having to litigate against the three defendants in three separate forums.

10

If the forum-selection clauses are enforced in this case, each of the plaintiffs would only have to litigate in one forum. Reif would litigate its claims in Missouri (Reif), the Sumpters and the Mosemans would pursue their claims in Iowa, and the remaining plaintiffs would litigate their claims in one forum (Ohio).

Although the complaint in this case was filed as a potential class action, this factor does not mandate keeping all the plaintiffs in a single action. It is likely that the plaintiffs would fall into three different subclasses in any event, and the claims of those three subclasses can be litigated separately. Reif's agreement was with MSI, and Reif elected to keep its current franchise agreement (Option 3). The Mosemans and the Sumpters also selected Option 3, but their franchise agreement was with Medicap. The remaining plaintiffs selected Option 1. The Option 1 plaintiffs allege that they were fraudulently induced to enter into new franchise agreements, while the Option 3 plaintiffs allege that they were fraudulently induced not to choose Option 1. The practical problems of litigating these three separate positions in one action could well outweigh the inconvenience of trying those claims separately in three jurisdictions.

In regard to the public considerations, there is no argument that a judgment obtained in the Missouri or Iowa courts would not be enforceable. As to the practical considerations of trial management, a single trial would present both advantages and procedural challenges. The testimony of some witnesses and other evidence would only have to be presented once in a single trial. However, it does not necessarily follow that all evidence which would be presented in a single trial would have to be presented three times if the forum-selection clauses are enforced. For

11

example, in a separate trial of Reif's claims, evidence relating to the franchise agreements of the other plaintiffs may not be relevant.   A single trial in Ohio would also present other logistical difficulties.   Defendants note that all plaintiffs except for Reif waived the right to a jury trial in their agreements.  Thus, if a single trial is held in Ohio, a jury would have to be empaneled to hear Reif's claims alone, even though the claims of the other plaintiffs would be tried to the court.   In addition, due to the choice of law clauses in the various franchise agreements, proceeding with a singe trial would require applying the law of three states.  The jury hearing Reif's claims would be instructed on Missouri law, but the law of Iowa would be applied to the claims of the Sumpters and the Mosemans, and Ohio law would be applied to the claims of the other plaintiffs.

The docket congestions of the relevant courts are comparable and not a significant factor.   As to local interest, the record does not indicate where the relevant franchise agreements were negotiated or executed; there is no evidence that locus of operative facts is Ohio rather than Missouri or Iowa.  Although MSI and Cardinal are located in Ohio, that state does not appear to have a greater interest in having the plaintiffs' claims resolved here as opposed to in the chosen forums.

There has been no showing that any public policies of Missouri, Iowa, or Ohio present any significant issue for this analysis.  As to this court's familiarity with the governing law, the franchise agreements call for the application of Missouri law, in the case of Reid, and Iowa law, in the case of the Sumpters and the Mosemans.  Since the courts in Missouri and Iowa would presumably be more familiar with the law in those states than this

court, this factor would weigh in favor of enforcing the forum-selection clauses.

The court concludes that an analysis of the §1404(a) factors also supports enforcement of the forum-selection clauses applicable to Reif, the Sumpters and the Mosemans. However, as noted above, a dismissal of the claims those plaintiffs pursuant to Rule 12(b)(6) is also a suitable vehicle for enforcement of the clauses. Dismissal of these claims, as opposed to a transfer, will give these plaintiffs the opportunity to consider such matters as whether these actions should be filed in federal or state court in the designated venues, and whether the actions should include class allegations. The motion to dismiss the claims of Reif, the Sumpters and the Mosemans is granted, and those claims are dismissed without prejudice.

II. Motion to Dismiss Claims of Superior Care, MS Artesia and Trone

A. Rule 12(b)(6) Standards

Defendants have moved pursuant to Rule 12(b)(6) to dismiss the claims of Superior Care, MS Artesia and Trone (who will be referred to in this portion of the order as "plaintiffs") for failure to state a claim for which relief may be granted. Defendants argue that the complaint as to these plaintiffs fails to state a claim for fraud. Defendants also argue that the fraud and breach of contract claims are barred by the release signed by those plaintiffs.

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to

13

relief.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005).  To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim.  Campbell v. PMI Food Equipment Group, Inc., 509 F.3d 776, 780 (6th Cir. 2007).  A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  Id. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown

14

that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2). <u>Ibid</u>.

Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555; <u>see also Ashcroft</u>, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); <u>Association of Cleveland Fire Fighters v. City of Cleveland, Ohio</u>, 502 F.3d 545, 548 (6th Cir. 2007).

Under Fed.R.Civ.P. 9(b), "a party must state with particularity the circumstances constituting fraud[.]" Rule 9(b) requires a plaintiff to allege the time, place, and content of the alleged misrepresentation relied upon, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud. <u>Bennett v. MIS Corporation</u>, 607 F.3d 1076, 1100 (6th Cir. 2010).

## B. Sufficiency of Fraud Allegations

Under Ohio law, the elements of fraud and fraudulent inducement are essentially the same. <u>Gentile v. Ristas</u>, 160 Ohio App.3d 765, 781, 828 N.E.2d 1021 (2005). The elements of fraud are: (1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by that reliance. <u>Williams v. Aetna Fin. Co.</u>, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998). In arms length business transactions, each party is

15

ordinarily presumed to have the opportunity to ascertain relevant facts available to others similarly situated, and in such instances neither party has a duty to disclose material information to the other.  Blon v. Bank One, Akron, N.A., 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988).

In the complaint, it is alleged that defendants made fraudulent statements when they represented (1) that they would only go forward with the new franchise agreement offered in Option 1 if an overwhelming number of franchisees chose Option 1, and (2) those franchises with Most Favored Nation clauses universally chose Option 1.  It is further alleged that defendants made false statements when they stated (3) that franchisees had to make their decisions by April 10, 2009, (4) that the 2009 offering was non-negotiable, and (5) that the 2009 offering was made to grow and promote the Medicine Shoppe and Medicap franchise systems.  First Amended Complaint, ¶ 100.

Plaintiffs refer in the complaint to the 2009 Franchise Offering made by Medicine Shoppe and Medicap to its franchisees, attached as Exhibit E to the first amended complaint.

In regard to the first two alleged representations, the 2009 offering states:

> This new agreement constitutes a "tender offer" that will require the overwhelming participation of our eligible franchisees.  If there is not sufficient participation, this new agreement will be withdrawn for all franchisees, and all current agreements will remain in full force and effect.  MSI needs consistency across the franchise system to be able to support this new agreement.

Ex. E, p. 3.  The offering further states:

> This is a "tender offer" that will require the participation of an overwhelming majority of franchisees to go into effect.  If this does not happen, Options 1

and 2 may be withdrawn as options for all franchisees and all current franchise agreements will remain in full force and effect.

Ex. E., pp. 8, 10, 34.  The offering further states, "For a select number of stores, must have a universally accepted solution to license agreements having a 'Most Favored Nation' clause."  Ex. E, p. 10.

The above statements are insufficient to plead fraudulent misrepresentation.  The offering states on page 3 that the offer "will require the overwhelming participation of our eligible franchisees" and that "[i]f there is not sufficient participation, this new agreement will be withdrawn."  However, what constitutes "overwhelming participation" is not defined.  This language leaves it to the defendants' discretion to determine what constitutes "overwhelming participation" and to withdraw the new agreement they determine that sufficient participation in the new agreement is lacking.[2]  Even plaintiffs acknowledge in their complaint that the "terms of the 2009 Offering also gave MSI, Medicap, and Cardinal discretion over whether or not to implement the New System by accepting its franchisees' responses to the 2009 Offering."  First Amended Complaint, ¶ 118.

Plaintiffs allege that as of July 27, 2009, fifty-four percent of the franchisees had elected Option 1 and four percent had elected Option 2, for a total of fifty-eight percent.  First Amended Complaint, ¶ 79 and Ex. I.  This figure represents a solid majority of the franchisees, and could arguably be considered

_____

[2]The new franchise agreement provides that both the franchisor and the franchisee have the right to terminate the agreement, with or without cause, upon ninety days prior written notice to the other party.  First Amended Complaint, Ex. F, Section VI (A) and (B).

17

"overwhelming participation" by the defendants. In addition, this may not be the final figure, since the deadline for conversion to Option 1 was extended to January, 2010. Based on the ambiguity of the phrase "overwhelming participation" and the fact that defendants retained discretion to determine, based on the future response to the offering, what constituted "overwhelming participation" sufficient to warrant not withdrawing the offer, plaintiffs were not justified in relying on that phrase as a prediction of defendants' actions.[3]

Additional language in the offering should also have alerted plaintiffs to the fact that the offering reserved to defendants the right to determine what constituted "overwhelming participation" sufficient to warrant putting the new system into effect. The offering states in two places that "Options 1 and 2 may be withdrawn as options for all franchisees" if an overwhelming number of franchisees did not select those options. Ex. E, pp. 8, 10 (emphasis supplied). The franchisee election form used by franchisees to select an option also states that "Options 1 and 2 may be revoked for all franchisees" if an overwhelming number of franchisees did not select those options. Ex. E, p. 34 (emphasis supplied). In light of this discretionary language, at the time plaintiffs signed the new agreement, they could not have reasonably relied on the offering language as offering any guarantee that defendants' determination of what constituted "overwhelming participation" would agree with their own.

---

[3]Plaintiffs allege that during road show information meetings, MSI defined "overwhelming participation" meant at least ninety-five percent. First Amended Complaint, ¶53. However, plaintiffs have not adequately pleaded the exact dates and times of these alleged oral representations, which were not included in the written offer, nor have they alleged that these representations were made to plaintiffs Superior Care, MS Artesia and Trone.

Plaintiffs also allege that the statement in the offering that franchisees had to make their decision by April 10, 2009, was false because the deadline was later extended to June 30, 2009, and again to January 15, 2010.  The March 4, 2009, letter concerning the offering states that the franchisees "will need to state their decision to MSI by Friday, April 10, 2009."  The election form states, "this needs to be completed by April 10, 2009" and further states that if the election form was not returned by that date, "the franchisee will be deemed to have elected Option 3."  First Amended Complaint, Ex. E, p. 24.

"Generally, fraud claims are not predicated on a representation concerning a future event, as such representation is more in the nature of a promise or contract or constitutes mere predictions or opinions about what the future may bring." Yo-Can, Inc. v. The Yogurt Exchange, Inc., 149 Ohio App.3d 513, 525, 778 N.E.2d 80 (2002); Link v. Leadworks Corp., 79 Ohio App.3d 735, 742, 607 N.E.2d 1140 (1992)(mere predictions about the future, expectations, or opinions are not fraudulent misrepresentations unless those opinions are fraudulently made).  The statements concerning how long the offer would remain open simply establish an initial deadline for completing the franchise election form.  The materials do not state that the opportunity to sign up for Option 1 would not be extended under any circumstances.  Further, the complaint lacks any allegations as to why these statements concerning the deadline for submitting an election form were material, or how plaintiffs were injured by the extension of the deadline.  The statements concerning the offer deadline do not concern a fact relevant to the actual terms of the agreement signed by plaintiffs.  This case does not involve, for example, a

19

subscription offer for a limited edition art print, with the size of the edition (and therefore possibly the future value of the print) being determined by the order deadline. If plaintiffs' other allegations concerning the importance of a uniform franchise system are considered, it would ostensibly be to plaintiffs' advantage to extend the deadline to give additional franchisees the opportunity to select Option 1.

Plaintiffs also allege that the statement in the offering that the offering was non-negotiable by the franchise system was false because some franchisees were allowed to negotiate other terms in their agreements. This statement does not concern a matter of fact relevant to the actual terms of the new agreement, but rather indicates the bargaining position of defendants as of the time the offering was made. The fact that defendants later negotiated other terms with some franchisees does not indicate that the statement was a false representation concerning defendants' bargaining at the time it was made. It would not be unexpected for the defendants' stance to soften if the initial response to the offering was not overwhelmingly in favor of the new system. The complaint also fails to allege how plaintiffs could have reasonably relied on that statement, or that they were injured by this statement. If they were dissatisfied by the terms of the form agreement, they were free to reject it, and could reasonably be expected to have asked if defendants were willing to alter any unsatisfactory terms. Instead, they negotiated a new agreement with which they were presumably satisfied. Plaintiffs cannot now fault defendants for their own lack of bargaining savvy.

Plaintiffs also claim that the statement that the 2009 offering was made to grow and promote the Medicine Shoppe and

20

Medicap franchise systems was fraudulent.  Plaintiffs note that the offering materials represented that the new agreement would result in a common and consistent franchise agreement which would promote system growth, and that "MSI needs consistency across the franchise system to be able to support this new agreement."  Ex. E., p. 3. Plaintiffs allege that they were induced by these statements to terminate their prior agreements and enter into Option 1 agreements, but that since other franchisees selected Option 3 and continued to operate under their existing franchise agreements, plaintiffs did not get the benefit of a uniform franchise system.

The above statements are merely expressions of opinion or predictions about the future of the new franchise system, and thus cannot constitute predicates for fraud.  Wells Fargo Bank, N.A. v. Sessley 188 Ohio App.3d 213, 231, 935 N.E.2d 70 (2010).  A claim of fraud cannot be predicated upon promises or representations relating to future actions or conduct.  Martin v. Ohio State University Foundation, 139 Ohio App.3d 89, 98, 742 N.E.2d 1198 (2000).  Representations concerning what will occur in the future are considered to be predictions and not fraudulent misrepresentations.  Id.  Since the new franchise system had not yet been implemented at the time of the offering, defendants' views as to how the franchise system might be improved through the new agreements in the future could not reasonably be construed as fact.

Further, the complaint fails to allege facts as to how plaintiffs could have reasonably relied on the statements concerning a uniform franchise system as being a guarantee that such a system would be implemented.  The offering contains no promises that all franchisees would agree to the new system.  In fact, the offer states,

> While we believe this option will be the best and most
> beneficial option for most of our franchisees, MSI
> recognizes that the new agreement may not meet the needs
> of all franchisees.  Therefore, franchisees also have the
> options to continue with their current franchise
> agreement or to buy-out their current franchise agreement
> as further described in this package.

First Amended Complaint, Ex. E, p. 3.  It is clear from the offering that franchisees could choose not to convert to the new agreement.  Although the offering advised franchisees that MSI had the option of withdrawing the offering if an overwhelming number of franchisees did not convert, it contains no statements that MSI was required to withdraw the new agreement in that event.  In addition, plaintiffs have failed to allege facts sufficient to show how they have been injured by participating in a fragmented franchise system.  Although plaintiffs note the statement in the offering that "MSI needs consistency across the franchise system to be able to support this new agreement," this alone is insufficient to constitute an admission on the part of defendants that MSI is incapable of fulfilling its contractual obligations under the new agreement in a system which included Option 3 franchisees.

In summary, the allegations in the complaint are insufficient to allege a claim of fraud on behalf of Superior Care, MS Artesia and Trone, and defendants' motion to dismiss the fraud claim of those plaintiffs is well taken.

C. Release

Defendants also argue that plaintiffs' claims for fraud and breach of contract are barred by a release contained in the termination agreements they signed.

Plaintiffs argue that this court may not consider the release agreements attached as exhibits to defendants' motion to dismiss

22

because those documents were not attached as exhibits to the first amended complaint. In evaluating a motion to dismiss, a court generally is limited to the complaint and exhibits attached thereto. <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502 (6th Cir. 2001). However, the court may also consider a document or instrument which is attached to the complaint, or which is referred to in the complaint and is central to the plaintiffs' claims. <u>See</u> Fed.R.Civ.P. 10(c)("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); <u>Doe v. SexSearch.Com</u>, 551 F.3d 412, 416 (6th Cir. 2008)("While our analysis primarily focuses on the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint ... may be taken into account.'")(quoting <u>Aminia</u>, 259 F.3d at 502); <u>Weiner v. Klais & Co., Inc.</u>, 108 F.3d 86, 89 (6th Cir. 1997). Where the plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading. <u>Greenberg v. Life Ins. Co. of Virginia</u>, 177 F.3d 507, 514 (6th Cir. 1999); <u>Weiner</u>, 108 F.3d at 89.

The first amended complaint in this case states:

> An Option 1 franchisee also had to sign a Termination Agreement And Release ("Release" or "Releases"). The Releases were the mechanism under which Option 1 franchisees terminated their Legacy Franchise Agreements and paid their early termination penalties. As the name of the agreement implies, MSI and Medicap forced Option 1 franchisees to (purportedly) release MSI, Medicap, and Cardinal from any and all liability arising out of the Legacy Franchise Agreements and the franchisee/franchisor relationship in general.

First Amended Complaint, ¶ 63. The first amended complaint further states that "[o]nly after an Option 1 franchisee signed its Release

did it sign a copy of the New Agreement." First Amended Complaint, ¶ 64. Plaintiffs also request the court to enter judgment against defendants and in favor of the Option 1 franchises "rescinding the Releases they signed[.]" First Amended Complaint, ¶ 109(b). Since the first amended complaint specifically references the release agreements and the Option 1 plaintiffs seek rescission of those agreements as part of the relief sought in this case, defendants are permitted to offer those releases as exhibits to their motion to dismiss, and the court may consider those releases in ruling on the motion.

Plaintiffs also argue that since release is an affirmative defense, and since defendants have not yet filed an answer in this case, the release cannot be raised as a grounds for dismissal under Rule 12(b)(6). However, a complaint showing on its face that relief is barred by an affirmative defense is properly subject to a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Rauch v. Day and Night Manuf. Corp., 576 F.2d 697, 702 (6th Cir. 1978)(holding that a limitations defense may be raised by a Rule 12 motion); see also New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003)(a motion to dismiss under Rule 12(b)(6) on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief)(abrogated on other grounds, Merck & Co. v. Reynolds, 130 S.Ct. 1784 (2010).

"[A] motion for dismissal pursuant to Rule 12(b)(6) will be granted if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." Riverview Health Institute LLC v. Medical

24

_Mutual of Ohio_, 601 F.3d 505, 512 (6th Cir. 2010). Where the complaint adequately states a claim, but also contains matters of avoidance that effectively vitiate the pleader's ability to recover on the claim, "'the complaint is said to have a built-in defense and is essentially self-defeating.'" _Id._ (quoting 5B Wright & Miller, Federal Practice & Procedure §1357 (3d ed.2004)). Since Fed.R.Civ.P. 8 categorizes release as an affirmative defense, that defense may be raised in a motion to dismiss under Rule 12(b)(6) when the defense is shown by the face of the complaint. _Crystal Clear Imaging, LTD v. Siemens Medical Solutions, Inc._, No. 3:07-cv-441 (unreported), 2008 WL 21144867 at *5 (S.D.Ohio May 1, 2008).

The termination agreements contain the following language:

> The Licensee hereby remises, releases, and forever discharges, with prejudice, MSI and its parent company, subsidiaries, and affiliates and its officers, directors, and employees, and its successors and assignees, from all debts, covenants, liabilities, actions, and causes of action of every kind and nature arising out of the License Agreement and out of the franchise relationship between the parties.

Fiacco Decl., Exs. 2-5, Section F.1.

Plaintiffs contend that the release is invalid because the contract in which it is included was induced by fraud. Defendants argue that the representations upon which plaintiffs rely to show fraud may not be considered under the parol evidence rule due to the integration clause in the termination agreements, which states as follows:

> 1. This termination Agreement represents the complete agreement of the parties with respect to the termination of the License Agreement and any and all Ancillary Agreements, and any claims the parties may have against each other with respect thereto. This Termination Agreement shall be interpreted under the laws of the State of Ohio and may only be modified by a written

agreement.

\* \* \*

3. No representations have been made by any party concerning this Termination Agreement and each party to this Termination agreement enters into it voluntarily having either relied upon the advice of counsel, or having had the opportunity to confer with counsel.

Fiacco Decl., Exs. 2-5, Section G.1. and  G.3.

The parol evidence rule states that "'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"  <u>Galmish v. Cicchini</u>, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000)(quoting 11 Williston on Contracts §33:4, pp. 569-570 (4th Ed.1999)).  The parol evidence rule does not prohibit a party from introducing extrinsic evidence for the purpose of proving fraudulent inducement, even if the agreement contains an integration clause.  <u>Id.</u>, 90 Ohio St.3d at 28.  However, the parol evidence rule may not be avoided by a fraudulent inducement claim which alleges that the inducement to sign the agreement was a promise, the terms of which are directly contradicted by the signed writing.  <u>Id.</u> at 29.  Thus, unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible.  <u>Id.</u> at 30.  Stated another way, where the substance of the alleged extrinsic promise is clearly within the scope of the integrated agreement, and the terms of the alleged extrinsic promise are terms which, if they existed, would have been incorporated into the integrated agreement, the parol evidence rule prevents the presentation of evidence which tends to contradict the terms of the integrated agreement.  <u>Deutsche Bank National Trust</u>

<u>Co. v. Pevarski</u>, 187 Ohio App.3d 455, 473, 932 N.E.1d 887 (2010).

Plaintiffs rely on the documents referred to in the fraud allegations in the complaint as the basis for their claim of fraud in the inducement. Defendants argue that this evidence is barred under the parol evidence rule because these extrinsic representations are contradicted by the language in the integrated termination agreement which states: "No representations have been made by any party concerning this Termination Agreement." It is not clear under Ohio law whether this type of language is simply another way of wording an integration clause, or if its inclusion means something more, such as to automatically bar claims of fraud in the inducement. However, it is not necessary to decide that issue. The representations cited by plaintiffs include matters which, if they were intended to be binding terms, would have been incorporated into the integrated agreement. Thus, the evidence is barred by the parol evidence rule. In addition, even if the evidence is considered, the court has determined that this evidence is insufficient to support a claim for fraud or fraud in the inducement. Therefore, based on the evidence attached to and/or referred to in the complaint, there is no basis for setting aside the release due to fraud in the inducement, and the release bars the claims of fraud and breach of contract asserted by Superior Care, MS Artesia and Trone.

<u>D. Declaratory Judgment Claim</u>

Defendants further argue that this court should decline to consider plaintiffs' claim for declaratory judgment. Defendants argue that since the declaratory judgment claim is duplicative of the fraud and breach of contract claims, this court may decline to entertain the request for declaratory judgment.

The Declaratory Judgement Act is "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 287 (1995)(quoting <u>Public Serv. Comm'n of Utah v. Wycoff Co.</u>, 344 U.S. 237, 241 (1952)).  In deciding whether to entertain a declaratory judgment action, the court should consider: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; 94) whether the use of a declaratory action would increase the friction between federal and state courts or improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.  <u>Bituminous Casualty Corp. v. J & L Lumber Co.</u>, 373 F.3d 807, 813 (6th Cir. 2004).

Now that the court has determined that the claims of fraud and breach of contract asserted by Superior Care, MS Artesia and Trone will be dismissed under Rule 12(b)(6), declaratory judgment would not settle the controversy or serve a useful purpose in clarifying the legal relations at issue.  Entertaining the declaratory judgment claim to address the same issues raised by substantive claims which have bee deemed to be insufficiently pleaded would defeat the purpose of Rule 12(b)(6).  There is no evidence that plaintiffs seek declaratory judgment merely for the purpose of procedural fencing, and encroachment on state court jurisdiction is not an issue.  However, even if the fraud and breach of contract claims had survived defendants' Rule 12(b)(6) motion, there is no relief this court could have granted in a declaratory judgment

action that could not have been awarded if plaintiffs prevailed on those direct claims.  Therefore, this court determines, in its discretion, that it will not entertain the declaratory judgment claims asserted by Superior Care, MS Artesia and Trone.

III. Conclusion

In accordance with the foregoing, plaintiffs' motion for leave to file a surreply (Doc. No. 49) is granted.  Defendants' motion to dismiss (Doc. No. 21) is granted.  The claims of plaintiffs Daniel Reif, Inc., Toni R. Sumpter, Daniel D. Sumpter, Marilyn Gay Moseman and Robert F. Moseman are hereby dismissed without prejudice pursuant to Rule 12(b)(6) based upon the forum selection clauses in their franchise agreements.  The claims of plaintiffs Superior Care, MS Artesia and Trone are dismissed pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted.


Date: February 10, 2011          _____s/James L. Graham_____
                                 James L. Graham
                                 United States District Judge